UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE ANDERSON,<br><br>  Plaintiff,<br><br>  v.<br><br>OPTUM SERVICES, INC.,<br><br>  Defendant. | No. 1:24-cv-00535-KES-CDB<br><br>ORDER GRANTING DEFENDANT OPTUM SERVICES, INC.'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 10) |

This matter is before the Court on the motion to compel arbitration filed by defendant Optum Services, Inc., ("Optum") on September 25, 2024. (Doc. 10.) The pending motion was taken under submission on the papers pursuant to Local Rule 230(g) on October 22, 2024. (Doc. 14.) For the reasons explained below, defendant Optum's motion to compel arbitration is granted.

**BACKGROUND**

On March 20, 2024, plaintiff Nicole Anderson initiated this action by filing a complaint against Optum and Does 1–50 in the Kern County Superior Court. (Doc. 1-2 at 5.) Optum was served with the summons and a copy of the complaint on April 4, 2024. (*Id.* at 2–5.) After filing an answer to Anderson's complaint on May 3, 2024, Optum timely filed a notice of removal in this court on May 6, 2024. (Docs. 1; 1-3 at 2.)

1

As set forth in the complaint, Anderson was employed by Optum "in the position of Licensed Insurance Agent from February of 2015 [until she was terminated on] August 31, 2022." (Doc. 1-2 at 7, 9.) Her work responsibilities "included taking inbound calls for people who wanted Medicare insurance or supplements, notating the accounts, conducting customer service, and answering questions regarding insurance." (*Id.* at 8.) In August of 2021, Anderson suffered a stroke and was hospitalized for two days. (*Id.*) Anderson was at risk of suffering another stroke, so her doctor ordered disability leave, which Anderson took from December 16, 2021, to June of 2022. (*Id.*) While on leave, Anderson received text messages from her manager, Sholeh Cox, who would check in for updates and who told her "not [to] return to work until all of her doctor's appointments had been completed, so she would not have to request any more time off." (*Id.*) According to the complaint, Anderson did not timely receive a $1,800 monthly sales incentive payout for the time she worked in December of 2021. (*Id.*) Instead, she received a $500 payout sometime in 2022, "well after [she] had been terminated." (*Id.*)

When Anderson returned to work in June of 2022, Cox expected her to be familiar with a new sales system despite Anderson never having received the proper training due to being on leave. (*Id.*) "[Anderson] asked Ms. Cox for help or training, but Ms. Cox refused to help and would assign other coworkers who did not fully understand the system either to help train Ms. Anderson, or just tell her to watch the training videos if she had any questions." (*Id.*) Despite refusing to personally train Anderson, Cox blamed her for mistakes and criticized her for not understanding how things worked. (*Id.*) Ultimately, Anderson was forced to familiarize herself with the new system through trial and error. (*Id.*)

On or around June 30, 2022, Anderson was taken to the hospital and diagnosed with COVID-19. (*Id.*) She was granted two weeks of leave to recover. (*Id.*) During this time, Cox "would constantly message Plaintiff about her customers and pressure her to return to work." (*Id.* at 8–9.) When Anderson returned to work in mid-July, she filed a complaint with HR regarding Cox's "continued unprofessional and retaliatory behavior." (*Id.* at 9.) Subsequently, Anderson received two write-ups from Cox, which were ultimately converted into warnings, and was told she had thirty days to fix her performance. (*Id.*) On August 31, 2022, Anderson was terminated

"for allegedly keeping a customer on a callback hold for an excessive amount of time." (*Id.*) According to Anderson, on a couple of occasions, she answered a client's call a few seconds too late because she was still familiarizing herself with the new system. (*Id.*) The complaint alleges that "Ms. Cox retaliated against Plaintiff for requesting an accommodation" and that Anderson was terminated "in retaliation for reporting Ms. Cox to HR and for taking medical leave." (*Id.*)

As a condition of her employment, Anderson was required to electronically sign an employment arbitration policy provided by UnitedHealth Group Incorporated.[1] (Doc. 10-2 at 2–5.) The policy defines "UnitedHealth Group" to include its subsidiaries and explains that the policy was made to address "disagreements [that] may arise between an individual employee and UnitedHealth Group or between employees in a context that involves UnitedHealth Group." (*Id.* at 8.) By its terms, the policy "creates a contract requiring both parties to resolve most employment-related disputes . . . that are based on a legal claim through final and binding arbitration."[2] (*Id.*) The disputes covered under the policy include:

> any dispute between an employee and UnitedHealth Group and any dispute between an employee and any other person where: (1) the employee seeks to hold UnitedHealth Group liable on account of the other person's conduct, or (2) the other person is also covered by this Policy and the dispute arises from or relates to employment, including termination of employment, with UnitedHealth Group. The disputes covered under the Policy also include any dispute UnitedHealth Group might have with a current or former employee

---

[1] According to the declaration of Susan Weedman, Vice President of Employee Relations for UnitedHealth Group Incorporated, Optum is a subsidiary of UnitedHealth Group Incorporated. (Doc. 10-2 at 2, 3.)

[2] The policy excludes certain claims from mandatory arbitration:
> Claims excluded from mandatory arbitration under the Policy are claims under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention; and claims that, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, are not subject to mandatory pre-dispute arbitration. Such claims may be brought in arbitration under this Policy if the claimant so chooses. Also excluded from arbitration under the Policy are claims for severance benefits under the UnitedHealth Group Severance Pay Plan, claims for benefits under UnitedHealth Group's other ERISA benefit plans, and claims for benefits under UnitedHealth Group's Short-Term Disability Plan.

(Doc. 10-2 at 8.)

3

which arises or relates to employment.

(*Id.*)  The policy also states that "[a]cceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy."  (*Id.*)  On February 24, 2015, Anderson electronically signed the policy.  (*Id.* at 14.)

Based on the allegations summarized above, the complaint sets forth the following causes of action: (1) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA") Cal. Gov. Code. § 12900 *et seq.*; (2) harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to provide reasonable accommodations in violation of FEHA; (5) failure to engage in good faith interactive process in violation of FEHA; (6) retaliation for requesting/taking California Family Rights Act ("CRFA") leave in violation of Cal. Gov. Code § 12945.2; (7) failure to prevent discrimination, harassment and/or retaliation in violation of FEHA; (8) violation of the Kin Care Law, Cal. Lab. Code §§ 233, 246.5; (9) wrongful termination in violation of public policy; (10) failure to pay all earned wages in violation of the California Labor Code; and (11) waiting time penalties for failure to timely pay final wages, Cal. Lab. Code §§ 201, 203.

On September 25, 2024, Optum filed a motion to compel arbitration and a motion to stay this action pending a ruling on the motion to compel arbitration.  (Docs. 10, 11.)  Anderson did not file an opposition or a statement of non-opposition to either motion as required under Local Rule 230(c).  On October 17 and 22, 2024, the assigned magistrate judge and the undersigned issued minute orders, respectively, noting Anderson's non-response on the docket.  (Docs. 13, 14.)  On October 28, 2024, the magistrate judge granted Optum's motion to stay.  (Doc. 15.)  To date, Anderson has not responded.  "A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion."  L.R. 230(c).

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs arbitration agreements.  9 U.S.C. § 2. "Section 2 of the statute makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50 (2022) (quoting 9 U.S.C. § 2).  "As [the Supreme

Court has] interpreted it, this provision contains two clauses: An enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to 'any contract.'" *Id.* at 650 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)).

An aggrieved party seeking to enforce a written arbitration agreement may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. In ruling on a motion to compel arbitration, a court's role is "limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1017 (9th Cir. 2016). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Concepcion*, 563 U.S. at 351. However, parties may rely upon general contract defenses to invalidate an agreement to arbitrate. *See id.* at 339. "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

"To require arbitration, [a plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13 (1985)). If a valid arbitration agreement encompassing the dispute exists, arbitration is mandatory. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under section 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

5

## ANALYSIS

In its motion to compel arbitration, Optum argues that the employment arbitration policy is valid and enforceable under the FAA, and that all of Anderson's claims must be compelled to arbitration because they are encompassed by that agreement. (Doc. 10 at 10–14.) Optum also requests dismissal, or in the alternative, a stay of this action pending the outcome of arbitration. (*Id.* at 21–22.)

Faced with this unopposed motion and having examined the relevant authorities and the employment arbitration policy, the Court concludes that Optum has demonstrated that a valid agreement to arbitrate exists and that it covers the dispute at issue. *See Boardman*, 822 F.3d at 1017. Accordingly, Optum's motion to compel arbitration is granted.

As to Optum's request to dismiss, or in the alternative, stay this action, the Court finds that a stay is the proper disposition. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024).

## CONCLUSION

For the reasons explained above:

1. Optum's motion to compel arbitration (Doc. 10) is granted;
2. The parties shall submit all claims pending in this matter to arbitration in accordance with the employment arbitration policy signed on February 24, 2015 (Doc. 10-2 at 7–14);
3. This action is stayed pending completion of arbitration; and
4. Plaintiff and defendant are required to notify the Court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision.

IT IS SO ORDERED.

Dated:   November 21, 2024

UNITED STATES DISTRICT JUDGE